UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TERRIE PARKE,<br><br>   Plaintiff,<br><br>  v.<br><br>TRANSAMERICA RETIREMENT SOLUTIONS LLC, TATE & LYLE AMERICAS LLC, TATE & LYLE SOLUTIONS USA LLC, AND PRIMARY PRODUCTS INGREDIENTS, AMERICAS, LLC,<br><br>   Defendant. | No. _____ |

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1331, 1332, 1441 and 1446, Defendant Transamerica Retirement Solutions, LLC ("Transamerica") removes this action that was commenced by service of the Complaint on Transamerica pursuant to Conn. Gen. Stat. § 52-45a. *See VHS of Arrowhead, Inc. v. Cigna Health and Life Ins. Co.*, No. 3:22-cv-602 (SRU), 2023 WL 2697373, *3 (D.Conn. March 16, 2023) (holding that under Connecticut rules of civil procedure, an action is commenced by service of the complaint). A true copy of the Complaint and the exhibits is attached. *See* **Ex. A:** Compl. Since the action has not been filed, there are no other pleadings to attach. The action was commenced in the Judicial District of Litchfield, at Torrington, Connecticut Superior Court and is removed to the United States District Court for the District of Connecticut. As grounds for removal, Transamerica states:

1

**A.     THE COMPLAINT IS REMOVABLE ON THE BASIS OF FEDERAL QUESTION JURISDICTION**

Plaintiff Terrie Parke ("Parke" and/or "Plaintiff") commenced this action by serving the Complaint on Defendant Transamerica on May 12, 2023.  *See* **Ex. B:** Service of Process.  Co-defendants Tate & Lyle Americas LLC ("TLA"), Tate & Lyle Solutions USA LLC ("TLS"), and Primary Products Ingredients Americas LLC ("PPI") (collectively "Tate Defendants") were all served with the Complaint and consent to Removal.  *See* **Ex. C:** TLA Consent; **Ex. D:** TLS Consent; **Ex. E:** PPI Consent.  The Plaintiff alleges that she was provided incorrect information concerning her deceased husband's pension plans.  *See generally* **Ex. A:** Compl.  The Complaint asserts four causes of action against all defendants:  Count I – Negligence; Count II – Breach of Fiduciary Duty; Count III – Elder Exploitation in Violation of Conn. Gen. Stat. § Sec. 17b-462; Count IV – Fraudulent Misrepresentation.  *See id.*

The Plaintiff married Daniel Parke ("Decedent") in September 1978.  *See id.* at ¶ 7. The Decedent died in June 2009.  *See id.*  The Decedent was employed by A.E. Staley Manufacturing Company ("A.E. Staley") from October 1987 until his death.  *See id.* at ¶ 8.  A.E. Staley was purchased by the Tate Defendants.  *See id.*  "Through his employment, the Decedent earned benefits under two pensions, The Tate & Lyle North America Pension Plan ("Tate Benefit"), and the A.E. Staley Manufacturing Company Employee's Retirement Plan ("A.E. Staley Benefit")."  *See id.* at 9.

The Tate Defendants entered into a Pension Services Agreement ("PSA") with Transamerica to administer the Tate Benefit and the A.E. Staley Benefit, which were referred to collectively as the Tate & Lyle Salaried Pension Plan ("Salaried Pension Plan").  *See id.* at ¶ 10; Ex. B to Compl.: June 30, 2016 Letter; **Ex. F:** PSA (note: the contractual fees/costs agreed to in the PSA are redacted).  Pursuant to the PSA, Transamerica acts a third-party administrator for the

2

Salaried Pension Plan.

On June 22, 2016, the Tate Defendants sent correspondence to the Plaintiff, expressing condolences at the loss of her husband, and advising of a limited time offer under the Salaried Pension Plan for a lump sum payment of $188,986.64, which would be in lieu of monthly payments. *See* **Ex. A:** Compl., ¶¶ 12-14. Thereafter, Transamerica sent correspondence dated June 30, 2016, addressed to Daniel Parke, as if he was still alive, advising him of the vested benefit options under the Salaried Pension Plan that were payable in monthly installments. *See id.* at ¶¶ 17-19. The Plaintiff alleges that her financial advisor confirmed the estimated benefits with Transamerica and, as a result, she decided to forego the lump sum payment offer and planned for retirement based upon the monthly benefits payable from the Salaried Pension Plan. *See id.* at ¶¶ 19-22. In September 2021, the Plaintiff received her benefits package from Transamerica, which allegedly contained monthly benefits that were less than half of those expected. *See id.* at ¶¶ 28-31.

The Plaintiff alleges that (1) Transamerica provided inaccurate benefits information relating to the Salaried Pension Plan; (2) she relied upon the information to her detriment in planning for retirement; and (3) she suffered damages as a result. *See id.* This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under federal law, specifically the Employee Retirement Income Security Act of 1974, *as amended,* 29 U.S.C. §§ 1001 *et seq*. ("ERISA").

    **i.**    **The Doctrine of Complete Preemption**

The doctrine of "complete preemption" is a corollary of the "well-pleaded complaint rule." It applies "when the pre-emptive force of [the federal statutory provision] is so powerful as to displace entirely any state cause of action [addressed by the federal statute] …." *Dukes v. U.S.*

*Healthcare, Inc.,* 57 F.3d 350, 354 (3d Cir. 1995). "When the federal law completely preempts a state law cause of action, a claim within the scope of that federal law is federal in nature, even if it is pleaded in terms of state law, and it is therefore removable under 28 U.S.C. § 1441," *Beneficial Nat. Bank. v. Anderson,* 539 U.S. 1, 8 (2003).

In *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58 (1987), the United States Supreme Court established that the civil enforcement provision of ERISA § 502(a) is to be given the same "extraordinary preemptive force as had been given to Section 301 of the Labor-Management Relations Act of 1947," such that any state law "causes of action within the scope of the civil enforcement provisions" are necessarily federal in character and thus removable to federal court. 481 U.S. at 67.

Section 502(a) provides for civil actions brought "by a participant or beneficiary … to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a) also accords a "participant, beneficiary or fiduciary" the right to sue an ERISA plan fiduciary, in its individual capacity, for breach of fiduciary duty. 29 U.S.C. § 1132(a)(2); *see also Roma Concrete Corp. v. Pension Assocs.,* 384 F. Supp. 3d 597, 514 (E.D. Pa. 2019).

Complete preemption occurs when: (1) the plaintiff's state law claim could have brought under § 502(a); and (2) no other independent legal duty supports the plaintiff's claim. *Roma Concrete Corp.* 384 F. Supp. 3d 507, 514 (E.D. Pa. 2019).

### ii.     Plaintiff's Complaint is Completely Preempted by ERISA

The Complaint asserts that the Plaintiff was provided inaccurate pension benefit estimates from an employer sponsored retirement benefit plan that she relied upon to her detriment when

4

planning for retirement. It is undisputed that the Salaried Pension Plan was sponsored by the Decedent's employer and administered by Transamerica at the time of the lump sum window offer.

There can be no dispute that the Salaried Pension Plan is governed by ERISA because it provides retirement/pension benefits to employees of the Tate Defendants and their dependents. ERISA governs employee benefit plans offered and administered "by any employer engaged in commerce or in any industry or activity affecting commerce." *See* 29 USCA § 1003(a)(1). ERISA applies to any "employee pension benefit plan" and "pension plan," which are defined as:

> "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> (i)   provides retirement income to employees, or
>
> (ii)  results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan."

*See* 29 USCA § 1002(2)(A).

"Congress enacted ERISA to 'protect…the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 USCA § 1001(b)). "To this end, ERISA includes expansive pre-emption provisions, *see* ERISA § 514, 29 U.S.C. §1144, which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *See id.* (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

"ERISA's 'comprehensive legislative scheme' includes 'an integrated system of procedures for enforcement." *See Davila*, 542 U.S., at 208 (quoting *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)). The "deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *See Davila*, 542 U.S., at 209 (citing *Dedeaux,* 481 U.S., at 54-56; *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143-145 (1990)). "ERISA preempts a state law that refers to or has a connection with covered benefit plans…'even if the law is not specifically designed to affect such plans, or the affect is only indirect' and 'even if the law is consistent with ERISA's substantive requirements.'" *Dst. of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 130 (1992) (quoting *Ingersoll-Rand*, 498 U.S., at 139; *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1992)).

In the Second Circuit, "state laws that control or supersede central ERISA functions—such as state laws affecting the determination of eligibility for benefits, amount of benefits, or means of securing unpaid benefits—have typically been found to be preempted." *Hattem v. Schwarzenegger*, 449 F.3d 423, 431 (2d Cir. 2006) (quoting *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 324 (2d Cir. 2003)). Additionally, state laws that interfere with a "nationally uniform plan administration," are pre-empted as contravening a core goal of ERISA. *See id.* at 430 (citing *Egelhoff v. Egelhoff*, 532 U.S. 141, 149-150 (2001)). "Thus, the planning interests and administrative burdens of employers and plan administrators are also a significant ERISA

concern." *See Gerosa*, 329 F.3d, at 328. State laws that affect "the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries, and the plan itself" are subject to pre-emption. *See id.* at 324.

The Second Circuit employs a two-part *Davila* test to determine pre-emption: (1) whether the plaintiff can bring a claim under § 502(a)(1)(B) and whether "the actual claim that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 146 (2d Cir. 2017) (citing *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011)).

The employee pension benefit plan that the Plaintiff claims entitlement to derives directly and solely from the Salaried Pension Plan, which is a 401(a) tax qualified, ERISA plan. This Court is thus required to interpret the terms of the Salaried Pension Plan to determine what, if any, relief Plaintiff may be entitled to receive. Put otherwise, Transamerica owes the Plaintiff no independent legal duty to pay the Plaintiff the Salaried Pension Plan benefit amounts that she claims were inaccurately relayed to her and her advisor, absent any rights granted under the Salaried Pension Plan. The Plaintiff has no basis except under ERISA to seek Salaried Pension Plan benefits. Thus, both prongs of the *McCulloch* Court's *Davila* test are satisfied. Namely, the Plaintiff could have brought a claim under § 502(a)(1)(B) and the actual claims brought can be construed as colorable claims for benefits under § 502(a)(1)(B). As such, the Plaintiff's state law claims are pre-empted as they fall squarely within the scope of the civil enforcement provision of ERISA § 502(a)(1)(B).

With respect to Count I, Negligence, and Count II, Breach of Fiduciary Duty, the plaintiff asserts what are essentially common law malpractice claims against Transamerica, which are pre-empted by ERISA. Additionally, Count IV, Fraudulent Misrepresentation, is premised on the same alleged actions concerning benefits from the Salaried Pension Plan. The thrust of each claim is

that Transamerica owed the Plaintiff a duty of care to properly administer the Salaried Pension Plan benefits and that it breached that duty by, *inter alia*, providing inaccurate information, and that the plaintiff relied upon the information to her detriment.  The Second Circuit holds that such common law malpractice, negligence, and misrepresentation causes of action against fiduciaries, such as claims administrators, are pre-empted by ERISA.  *See Varela v. Barnum Financial Group*, 644 Fed.Appx. 30, 31-21 (2d Cir. 2016); *Nelson v. Unum Life Ins. Co. of America*, 232 Fed.Appx. 23 (2d Cir. 2007).

In *Varela*, the plaintiff's deceased husband was a participant in an employer sponsored benefits plan that offered life insurance.  When the decedent changed from full-time to part-time employment, his plan life insurance was reduced; however, the decedent had 31 days to convert the plan life insurance policy to a private policy and increase coverage.  The decedent died before converting the policy and his widow filed suit against the claims administrator alleging negligence, negligent misrepresentation, and breach of fiduciary duty.  *See Varela*, 644 Fed.Appx, at 31.  The Second Circuit affirmed the district court's determination that the state law claims were pre-empted by ERISA.  The Second Circuit held that disputes involving a core ERISA relationship, such as a claims administrator and a plan beneficiary, were pre-empted.  *See id.*  Since the plaintiff's claims involved the decedent's right to convert his insurance policy and the process for doing so, which were central ERISA functions, the state law claims were pre-empted by ERISA. *See id.*

In *Nelson*, the plaintiff sought long-term disability benefits available through her employer sponsored benefit plan.  *See Nelson v. Unum Life Ins. Co. of America*, 421 F.Supp.2d 558 (E.D.N.Y. 2006) (citation given as the Second Circuit opinion affirming the district court's decision does not recite the relevant facts or state law claims).  The plaintiff alleged that her

8

employer's purposeful mischaracterization of her job duties caused the claims administrator of the long-term disability benefits plan to deny benefits. *See id.* The plaintiff brought claims against her employer as fiduciary of the plan alleging breach of fiduciary duty, tortious interference, fraud and conspiracy, and negligence. *See id.* at 573. The Second Circuit affirmed dismissal of the state law claims as the "plan documents establish that [plaintiff's employer] is an ERISA fiduciary, one of the entities that Congress intended to exclusively regulate in its dealings with plan participants such as [the plaintiff]." *See Nelson*, 232 Fed.Appx., at 24. Further, the plaintiff's claims essentially concerned the "improper processing of a claim for benefits" and "were brought 'to rectify a wrongful denial of benefits promised under an ERISA-regulated plan.'" *See id.* at 24-25 (quoting *Davila*, 542 U.S., at 214). Finally, the Court held that "there exists no fully independent basis of state law from which these claims might arise" as the "plan documents themselves are the only basis of the agency relationship upon which [the plaintiff] relies." *See id.* at 25 (citing *Davila*, 542 U.S., at 212-214). Since "the state law upon which plaintiff predicates her claim takes as an 'essential part' the 'rights and obligations established by a benefit plan,' the claim is preempted." *See id.* (quoting *Davila*, 542 U.S., at 213).

Here, the Plaintiff's claims all arise from the "rights and obligations established by a benefit plan." *See id.* Furthermore, the only relationship between Transamerica and the Plaintiff is that of third party plan administrator and plan beneficiary. As the third party plan administrator, Transamerica is responsible for determining and paying benefits to the Plaintiff under the Salaried Pension Plan pursuant to the terms of the Salaried Pension Plan. The Plaintiff claims that Transamerica did so improperly. Such claims are precisely those that Congress sought to exclusively regulate through ERISA. As a result, Counts I, II, and IV are pre-empted by ERISA.

With respect to Count III, Elder Exploitation in Violation of Conn. Gen. Statute § 17b-462, the Statute is clearly preempted by ERISA. Section 17b-462 allows an elderly person who has been the victim of abuse to file suit seeking actual and punitive damages. First, the statute states that "no cause of action for neglect or abandonment may be brought against any person who has no contractual obligation to provide care to an elderly person unless such neglect was willful or criminal." *See* 17b-462(c). Here, not only is there no contract between Transamerica and the Plaintiff requiring Transamerica to provide care, but, importantly, the only relationship between the two is that of a third party plan administrator and plan beneficiary, which relationship is one that Congress sought to exclusively regulate. The Plaintiff's claims arise solely from this ERISA regulated relationship. Additionally, the statute permits recovery beyond any contemplated by ERISA. As such, Count IV is pre-empted by ERISA.

Based upon the foregoing, this action is removable to this Court under 28 U.S.C. §§ 1331 and 1441(a) because this Court has original jurisdiction over Plaintiff's claims based upon the doctrine of complete preemption. *Metropolitan Life,* 481 U.S., at 66-67.

### B. REMOVAL IS TIMELY AND VENUE IS APPROPRIATE

Plaintiff commenced this action by serving Transamerica with the Complaint on May 12, 2023. Since the Complaint has not been filed with the Judicial District of Litchfield, at Torrington, Connecticut Superior Court, no other pleadings are known by this Defendant to exist. Transamerica received service of process in this matter by service on Transamerica's agent for service of process.

Transamerica has removed this action within 30 days after service of the Plaintiff's Complaint, which states claims preempted by ERISA. Accordingly, removal is timely under 28 U.S.C. § 1446 (b).

Pursuant to 28 U.S.C. § 1441(a), the United States District Court for the District of Connecticut is the proper venue for removal because the Judicial District of Litchfield, at Torrington, Connecticut Superior Court is located within the District of Connecticut.

### C. ALL OTHER STATUTORY PREREQUISITES FOR REMOVAL HAVE BEEN OR WILL BE MET

Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be promptly served upon Plaintiff through his attorney of record.

Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will not be filed with the Judicial District of Litchfield, at Torrington, Connecticut Superior Court as the Plaintiff has not filed this action but rather commenced the action by serving the Complaint on Transamerica.

Transamerica has obtained consent for removal from the three Co-Defendants. *See* **Ex. C:** TLA Consent; **Ex. D:** TLS Consent; **Ex. E:** PPI Consent.

By filing this Notice of Removal, Transamerica does not waive its right to object to and specifically reserves the right to raise any defenses and/or objections to the Complaint to which it may be entitled.

WHEREFORE, Transamerica removes this action from Judicial District of Litchfield, at Torrington, Connecticut Superior Court to the United States District Court for the District of Connecticut.

June 9, 2023

                                            Respectfully Submitted,

                                            */s/ Brooks R. Magratten*
                                            Brooks R. Magratten (BBO# 650393)
                                            Pierce Atwood, LLP
                                            One Citizens Plaza, 10th Floor
                                            Providence, RI  02903
                                            (401) 490-3422
                                            (401) 588-5166 (fax)
                                            bmagratten@pierceatwood.com

                                            *Attorneys for Defendant Transamerica Retirement Solutions LLC*


## CERTIFICATE OF SERVICE

      I certify that the within document was electronically filed with the clerk of the court on June 9, 2023, and that it is available for viewing and downloading from the Court's ECF system.  Service by first class mail, postage prepaid, has been effectuated on counsel of record:

Trevor Doyon, Esq.
Doyon & White Law Group, PLLC
555 Long Wharf Drive, 1st Floor
New Haven, CT 06511

                                            */s/ Brooks R. Magratten*