STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TERRIE PARKE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TRANSAMERICA RETIREMENT SOLUTIONS LLC, TATE & LYLE AMERICAS LLC, TATE & LYLE SOLUTIONS USA LLC, AND PRIMARY PRODUCTS INGREDIENTS, AMERICAS, LLC,<br><br>　　　　　Defendant. | No. 3:23-cv-0751 |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO F.R. CIV. P. 12(b)(6)**

Defendants Transamerica Retirement Solutions LLC ("Transamerica"), Tate & Lyle Americas LLC, Tate & Lyle Solutions USA LLC, and Primary Products Ingredients, Americas, LLC submit this now move pursuant to F.R. Civ. P. 12(b)(6) to dismiss Plaintiff's Complaint. Plaintiff Terrie Parke ("Plaintiff") filed suit alleging that Transamerica provided incorrect information relating to her deceased husband's pension plans and that she relied upon the same to her detriment. Plaintiff sets forth various state law claims seeking damages. The Plaintiff's Complaint should be dismissed because the claims therein are completely preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended,* 29 U.S.C. §§ 1001 *et seq.* Plaintiff is limited to recovering benefits due under the Plan or to clarify her rights to future benefits under the Plan. 29 U.S.C. § 1132(c)(1)(B).

1

I.  **STATEMENT OF MATERIAL FACTS**

Plaintiff commenced this action by serving the Defendants with the Complaint pursuant to Conn. Gen. Stat. § 52-45a.  *See VHS of Arrowhead, Inc. v. Cigna Health and Life Ins. Co.*, No. 3:22-cv-602 (SRU), 2023 WL 2697373, *3 (D.Conn. March 16, 2023) (holding that under Connecticut rules of civil procedure, an action is commenced by service of the complaint).  The action was commenced in the Judicial District of Litchfield, at Torrington, Connecticut Superior Court.  Transamerica, with the concurrence of all Defendants, removed the action to the United States District Court for the District of Connecticut.

The Plaintiff alleges that she was provided incorrect information concerning her deceased husband's pension plans.  *See generally* Compl.  The Complaint asserts four causes of action against all defendants:  Count I – Negligence; Count II – Breach of Fiduciary Duty; Count III – Elder Exploitation in Violation of Conn. Gen. Stat. § Sec. 17b-462; and Count IV – Fraudulent Misrepresentation.  *See id.*

The Plaintiff married Daniel Parke ("Decedent") in September 1978.  *See id.* at ¶ 7. The Decedent died in June 2009.  *See id.* The Decedent was employed by A.E. Staley Manufacturing Company ("A.E. Staley") from October 1987 until his death.  *See id.* at ¶ 8.  A.E. Staley is a predecessor corporation to Tate & Lyle Americas LLC, Tate & Lyle Solutions USA LLC, and Primary Products Ingredients, Americas, LLC (collectively "Tate Defendants").  *See id.* "Through his employment, the Decedent earned benefits under two pensions, The Tate & Lyle North America Pension Plan ("Tate Benefit"), and the A.E. Staley Manufacturing Company Employee's Retirement Plan ("A.E. Staley Benefit")."  *See id.* at 9.  In October 1998, the Tate Defendants merged the two plans, along with other pension plans, and created the Tate & Lyle Salaried Pension

#16165654v1

Plan ("Plan"). *See* **Ex. A:** Plan at Art. I, p.1.[1]

The Tate Defendants entered into a Pension Services Agreement ("PSA") with Transamerica to administer the Plan. *See id.* at ¶ 10; Ex. B to Compl.: June 30, 2016 Letter; **Ex. A:** Plan; **Ex. B:** PSA.[2] Pursuant to the PSA, Transamerica acts a third-party administrator for the Plan.

On June 22, 2016, the Tate Defendants sent correspondence to the Plaintiff, expressing condolences at the loss of her husband, and advising of a limited time offer under the Plan for a lump sum payment of $188,986.64 in lieu of monthly payments. *See* Compl., ¶¶ 12-14. Thereafter, Transamerica sent correspondence dated June 30, 2016, addressed to the Decedent, advising of the vested benefit options under the Plan that were payable in monthly installments. *See id.* at ¶¶ 17-19. The Plaintiff alleges that her financial advisor confirmed the estimated benefits with Transamerica and, as a result, she decided to forego the lump sum payment offer and planned for retirement based upon the monthly benefits payable from the Plan. *See id.* at ¶¶ 19-22. In September 2021, the Plaintiff received a benefits package from Transamerica, which allegedly contained monthly benefits that were less than half of those expected. *See id.* at ¶¶ 28-31.

The Plaintiff alleges that (1) Transamerica provided inaccurate benefits information relating to the Plan; (2) she relied upon the information to her detriment in planning for retirement;

---

[1] Transamerica attaches as exhibits the relevant portion of the Administrative Record, which includes the Plan and the Pension Services Agreement. With her Complaint, the Plaintiff alleges that the Tate Defendants created the Plan for her deceased husband's pensions and that Transamerica was the claims administrator for the Plan. *See* Compl. at ¶¶ 9-44. Thus, the Plan and Pension Services Agreement documents create the relationships and duties upon which Plaintiff bases her claims for relief. As such, the PSA and Plan documents are incorporated by reference into the Complaint and the Court may consider them in ruling on this Motion to Dismiss. *See Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (holding that defendant may attach document to motion to dismiss upon which plaintiff relies for its claim to relief).

[2] The contractual fees/costs agreed to in the PSA have been redacted.

and (3) she suffered damages as a result. *See id.*

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), Plaintiff's claims must satisfy the pleading standards set forth in Rule 8(a) of the Federal Rules of Civil Procedure, and interpreted by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). "A motion to dismiss pursuant to Rule 12(b)(6) involves a determination as to whether the plaintiff has stated a claim upon which relief may be granted." *Glynn v. Bankers Life and Cas. Co.*, 297 F.Supp.2d 424, 426 (D.Conn. 2003). *Id.* In cases where state law claims are preempted by ERISA, courts commonly grant motions to dismiss. *See id.; Kolaskinski v. Cigna Healthplan of CT, INC.*, 163 F.3d 148 (2d Cir. 1998) (affirming district court dismissal of claims because they were preempted by ERISA).

## III.    ARGUMENT

### a.    The Plan is Governed by ERISA.

This Plan is governed by ERISA because it provides pension benefits in question to covered employees of the Tate Defendants and their beneficiaries. *See* **Ex. A:** Plan; **Ex. B:** PSA. ERISA applies to "any employee benefit plan if it is established or maintained . . . by any employer engaged in commerce." 29 U.S.C. § 1003(a). The term "employee welfare benefit plan" includes "any plan, fund or program . . . maintained by an employer . . . to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . . ." 29 U.S.C. § 1002(1).

Here, as stated in the Plan, the Tate Defendants created it "as the pension plan to provide benefits to their eligible employees." *See* **Ex. A:** Plan at Art. I, p.1. The Plan is "intended to meet the requirements of [ERISA] and qualify as exempt from taxation under Sections 401(a) and 501(a) of the Internal Revenue Code of 1986…" *See id.* Further, the Plan permits amendments to ensure its "tax-qualified status" and compliance "with the requirements of ERISA." *See id.* The Tate Defendants, as the "Employer," "shall be named the fiduciary of this Plan as required by ERISA Section 402(a)(1). *See id.* at Art. IX at p. 43. Pursuant to the PSA, Transamerica was retained to "provide administrative, actuarial, retiree payment, and trust and custody services for the [Plan] sponsored by the Employer." *See* **Ex. B:** PSA at p.1. Therefore, the Plan meets the definition of an employee welfare benefit plan under ERISA. 29 U.S.C. § 1002(1).

b.  **Plaintiff's State Law Claims Are Preempted By ERISA.**

The United States Supreme Court has observed that ERISA contains a broad preemption clause that states its provisions "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45 (1987) (quoting ERISA's statutory preemption language at 29 U.S.C. § 1144(a)). This broad preemption regime includes both express, or statutory, preemption and conflict preemption. *Id.* at 47, 56-57.

i.  **Statutory Preemption.**

Statutory preemption occurs when a "state law cause of action 'relates to' an ERISA plan, and is therefore preempted, if 'it has a connection with or reference to such a plan,' so long as that connection is not 'tenuous, remote, or peripheral.'" *In re SmithKline Beecham Clinical Laboratories, Inc.*, 108 F.Supp.2d 84, 112 (D.Conn. 1999) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983); *New York State Conference of Blue Cross and Blue Shield Plans v.*

*Travelers Insurance Co.*, 514 U.S. 645, 661 (1995)). A state law claim is preempted if the "existence of the ERISA plan[] is a 'critical factor in establishing liability,' and the causes of action asserted [by the beneficiary] are inextricably linked to the operation and management of th[e] ERISA plan[]." *See id.* (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir. 1996)).

The Complaint asserts four causes of action against all defendants, each of which require this Court to consult the Plan to determine entitlement to relief: Count I – Negligence; Count II – Breach of Fiduciary Duty; Count III – Elder Exploitation in Violation of Conn. Gen. Stat. § Sec. 17b-462; and Count IV – Fraudulent Misrepresentation. *See* Compl. Count I alleges that the Defendants negligently administered the Plan by providing her with incorrect information. Count II alleges that the Defendants owed her a fiduciary duty to administer the Plan. Count III alleges that the Defendants violated Conn. Gen. Statute Sec. 17b-142, Elder Exploitation, by providing the Plaintiff with incorrect information concerning her "vested Benefits" under the Plan. *See id.* at ¶ 48. Count IV alleges that the Defendants fraudulently misrepresented the amount of benefits available to her under the Plan.

Each of Plaintiff's causes of action relate directly to the Plan, the benefits available, and Transamerica's administration of the same. To determine whether the Plaintiff is entitled to relief under any count, the Court must refer to the Plan in order to determine both the benefits available to the Plaintiff and the nature of the relationship between the parties. Accordingly, Plaintiff's Complaint is expressly preempted by ERISA and should be dismissed.

    ii.    **The Doctrine of Complete Preemption**

The doctrine of "complete preemption" is a corollary of the "well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987). It applies when "Congress [] so

completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal in character" even if the "complaint…purport[s] to raise only state law claims." *See id.* at 64. "When the federal law completely preempts a state law cause of action, a claim within the scope of that federal law is federal in nature, even if it is pleaded in terms of state law, and it is therefore removable under 28 U.S.C. § 1441," *Beneficial Nat. Bank. v. Anderson,* 539 U.S. 1, 8 (2003). "On occasion…the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Marcus v. AT&T Corp.*, 138 F.3d 46, 53 (2d Cir. 1998) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).

In *Taylor,* the United States Supreme Court established that the civil enforcement provision of ERISA § 502(a) is to be given the same "extraordinary preemptive force as had been given to Section 301 of the Labor-Management Relations Act of 1947," such that any state law "causes of action within the scope of the civil enforcement provisions" are necessarily federal in character and thus removable to federal court. 481 U.S. at 67.

Section 502(a) provides for civil actions brought "by a participant or beneficiary … to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the plan." 29 U.S.C. § 1132(a)(1)(B). Section 502(a) also accords a "participant, beneficiary or fiduciary" the right to sue an ERISA plan fiduciary, in its individual capacity, for breach of fiduciary duty. 29 U.S.C. § 1132(a)(2); *see also Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321, 328-331 (2d Cir. 2011).

Complete preemption occurs when: (1) the plaintiff's state law claim could have brought under ERISA § 502(a); (2) the plaintiff's state law claims "can be construed as colorable claims

7

#16165654v1

for benefits pursuant to 502(a)(1)(B)"; and (3) no other independent legal duty supports the plaintiff's claim. *Montefiore*, 642 F.3d at 331-332.

### iii. Plaintiff's Complaint is Completely Preempted by ERISA

The Complaint asserts that the Plaintiff was provided inaccurate pension benefit estimates from an employer sponsored retirement benefit plan that she relied upon to her detriment when planning for retirement. It is undisputed that the Plan was sponsored by the Decedent's employer and administered by Transamerica at the time of the lump sum window offer.

There can be no dispute that the Plan is governed by ERISA because it provides retirement/pension benefits to employees of the Tate Defendants and their dependents. ERISA governs employee benefit plans offered and administered "by any employer engaged in commerce or in any industry or activity affecting commerce." *See* 29 USCA § 1003(a)(1). ERISA applies to any "employee pension benefit plan" and "pension plan," which are defined as:

> "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> (i)   provides retirement income to employees, or
>
> (ii)  results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan."

*See* 29 USCA § 1002(2)(A).

"Congress enacted ERISA to 'protect…the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal

#16165654v1

courts." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting 29 USCA § 1001(b)). "To this end, ERISA includes expansive pre-emption provisions, *see* ERISA § 514, 29 U.S.C. §1144, which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *See id.* (quoting *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981)).

"ERISA's 'comprehensive legislative scheme' includes 'an integrated system of procedures for enforcement." *See Davila*, 542 U.S. at 208 (quoting *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 147 (1985)).  The "deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). "Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *See Davila*, 542 U.S. at 209 (citing *Dedeaux,* 481 U.S., at 54-56; *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 143-145 (1990)). "ERISA preempts a state law that refers to or has a connection with covered benefit plans…'even if the law is not specifically designed to affect such plans, or the affect is only indirect' and 'even if the law is consistent with ERISA's substantive requirements.'" *Dst. of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 130 (1992) (quoting *Ingersoll-Rand*, 498 U.S., at 139; *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1992)).

In the Second Circuit, "state laws that control or supersede central ERISA functions—such as state laws affecting the determination of eligibility for benefits, amount of benefits, or means of securing unpaid benefits—have typically been found to be preempted."  *Hattem v.*

#16165654v1

*Schwarzenegger*, 449 F.3d 423, 431 (2d Cir. 2006) (quoting *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 324 (2d Cir. 2003)). Additionally, state laws that interfere with a "nationally uniform plan administration," are pre-empted as contravening a core goal of ERISA. *See id.* at 430 (citing *Egelhoff v. Egelhoff*, 532 U.S. 141, 149-150 (2001)). "Thus, the planning interests and administrative burdens of employers and plan administrators are also a significant ERISA concern." *See Gerosa*, 329 F.3d, at 328. State laws that affect "the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries, and the plan itself" are subject to preemption. *See id.* at 324.

The Second Circuit employs a two-part *Davila* test to determine pre-emption: (1) whether the plaintiff can bring a claim under § 502(a)(1)(B) and; (2) whether "the actual claim that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to § 502(a)(1)(B)." *McCulloch Orthopaedic Surgical Servs., PLLC v. Aetna Inc.*, 857 F.3d 141, 146 (2d Cir. 2017) (citing *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 328 (2d Cir. 2011)).

The pension benefits that the Plaintiff claims entitlement to derive directly and solely from the Plan, which is a 401(a) tax qualified, ERISA-regulated plan. This Court is thus required to interpret the terms of the Plan to determine what, if any, relief Plaintiff may be entitled to receive. Put otherwise, Transamerica owes the Plaintiff no independent legal duty to pay the Plaintiff the Plan benefit amounts that she claims were inaccurately relayed to her and her advisor, absent any rights granted under the Plan. The Plaintiff has no basis except under ERISA to seek Plan benefits. Thus, both prongs of the *McCulloch* Court's *Davila* test are satisfied. Namely, the Plaintiff could have brought a claim under § 502(a)(1)(B) and the actual claims brought can be construed as colorable claims for benefits under § 502(a)(1)(B). As such, the Plaintiff's state law claims are

pre-empted as they fall squarely within the scope of the civil enforcement provision of ERISA § 502(a)(1)(B).

With respect to Count I, Negligence, and Count II, Breach of Fiduciary Duty, the plaintiff asserts what are essentially common law malpractice claims against Transamerica, which are pre-empted by ERISA. Additionally, Count IV, Fraudulent Misrepresentation, is premised on the same alleged actions concerning benefits from the Plan. The thrust of each claim is that Transamerica owed the Plaintiff a duty of care to properly administer the Plan benefits and that it breached that duty by, *inter alia*, providing inaccurate information, and that the plaintiff relied upon the information to her detriment. The Second Circuit holds that such common law malpractice, negligence, and misrepresentation causes of action against fiduciaries, such as claims administrators, are pre-empted by ERISA. *See Varela v. Barnum Financial Group*, 644 Fed.Appx. 30, 31-21 (2d Cir. 2016); *Nelson v. Unum Life Ins. Co. of America*, 232 Fed.Appx. 23 (2d Cir. 2007).

In *Varela*, the plaintiff's deceased husband was a participant in an employer sponsored benefit plan that offered life insurance. When the decedent changed from full-time to part-time employment, his plan life insurance was reduced; however, the decedent had 31 days to convert the plan life insurance policy to a private policy and increase coverage. The decedent died before converting the policy and his widow filed suit against the claims administrator alleging negligence, negligent misrepresentation, and breach of fiduciary duty. *See Varela*, 644 Fed.Appx, at 31. The Second Circuit affirmed the district court's determination that the state law claims were pre-empted by ERISA. The Second Circuit held that disputes involving a core ERISA relationship, such as a claims administrator and a plan beneficiary, were preempted. *See id.* Since the plaintiff's

11

claims involved the decedent's right to convert his insurance policy and the process for doing so, which were central ERISA functions, the state law claims were preempted by ERISA. *See id.*

In *Nelson*, the plaintiff sought long-term disability benefits available through her employer sponsored benefit plan. *See Nelson v. Unum Life Ins. Co. of America*, 421 F.Supp.2d 558 (E.D.N.Y. 2006) (citation given as the Second Circuit opinion affirming the district court's decision does not recite the relevant facts or state law claims). The plaintiff alleged that her employer's purposeful mischaracterization of her job duties caused the claims administrator of the long-term disability benefits plan to deny benefits. *See id.* The plaintiff brought claims against her employer as fiduciary of the plan alleging breach of fiduciary duty, tortious interference, fraud and conspiracy, and negligence. *See id.* at 573. The Second Circuit affirmed dismissal of the state law claims as the "plan documents establish that [plaintiff's employer] is an ERISA fiduciary, one of the entities that Congress intended to exclusively regulate in its dealings with plan participants such as [the plaintiff]." *See Nelson*, 232 Fed.Appx., at 24. Further, the plaintiff's claims essentially concerned the "improper processing of a claim for benefits" and "were brought 'to rectify a wrongful denial of benefits promised under an ERISA-regulated plan.'" *See id.* at 24-25 (quoting *Davila*, 542 U.S., at 214). Finally, the Court held that "there exists no fully independent basis of state law from which these claims might arise" as the "plan documents themselves are the only basis of the agency relationship upon which [the plaintiff] relies." *See id.* at 25 (citing *Davila*, 542 U.S., at 212-214). Since "the state law upon which plaintiff predicates her claim takes as an 'essential part' the 'rights and obligations established by a benefit plan,' the claim is preempted." *See id.* (quoting *Davila*, 542 U.S., at 213).

Here, the Plaintiff's claims all arise from the "rights and obligations established by a benefit plan." *See id.* Furthermore, the only relationship between Transamerica and the Plaintiff is that

12

of third-party plan administrator and plan beneficiary. As the third-party plan administrator, Transamerica is responsible for determining and paying benefits to the Plaintiff under the Plan pursuant to the terms of the Plan. The Plaintiff claims that Transamerica did so improperly. Such claims are precisely those that Congress sought to exclusively regulate through ERISA. As a result, Counts I, II, and IV are preempted by ERISA.

With respect to Count III, Elder Exploitation in Violation of Conn. Gen. Statute § 17b-462, the Statute is clearly preempted by ERISA. Section 17b-462 allows an elderly person who has been the victim of abuse to file suit seeking actual and punitive damages. First, the statute states that "no cause of action for neglect or abandonment may be brought against any person who has no contractual obligation to provide care to an elderly person unless such neglect was willful or criminal." *See* 17b-462(c). Here, not only is there no contract between Transamerica and the Plaintiff requiring Transamerica to provide care, but, importantly, the only relationship between the two is that of a third-party plan administrator and plan beneficiary, which relationship is one that Congress sought to exclusively regulate. The Plaintiff's claims arise solely from this ERISA regulated relationship. Additionally, the statute permits recovery beyond any contemplated by ERISA. As such, Count IV is preempted by ERISA.

## IV. CONCLUSION

Based upon the foregoing, the Plaintiff's claims are preempted by ERISA. As a result, the Defendants' Motion to Dismiss should be granted and the Plaintiff's claims should be dismissed.

June 27, 2023

Respectfully Submitted,

*/s/ Brooks R. Magratten*
Brooks R. Magratten (BBO# 650393)
Pierce Atwood, LLP
One Citizens Plaza, 10th Floor
Providence, RI  02903
(401) 490-3422
(401) 588-5166 (fax)
bmagratten@pierceatwood.com

*Attorneys for Defendants Transamerica Retirement Solutions LLC, Tate & Lyle Americas, LLC, Tate & Lyle Solutions USA, LLC and Primary Products Ingredients, Americas, LLC*

## CERTIFICATE OF SERVICE

I certify that the within document was electronically filed with the clerk of the court on June 27, 2023, and that it is available for viewing and downloading from the Court's ECF system. Service by first class mail, postage prepaid, has been effectuated on counsel of record:

Trevor Doyon, Esq.
Doyon & White Law Group, PLLC
555 Long Wharf Drive, 1st Floor
New Haven, CT 06511

*/s/ Brooks R. Magratten*

#16165654v1